UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GS TIFFANY BOUNDAS and DOROTHY STOJKA, individually and on behalf of a class, | ) ) ) ) | |
| Plaintiffs, | ) ) | 10 C 4866 |
| vs. | ) ) | Judge Feinerman |
| ABERCROMBIE & FITCH STORES, INC., an Ohio corporation, | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Tiffany Boundas and Dorothy Stojka brought this putative class action against Defendant Abercrombie & Fitch Stores, Inc., alleging breach of contract and violation of the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code Ann. § 1345.01 *et seq*. Abercrombie has moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss Stojka's breach of contract claim and both Plaintiffs' OCSPA claims. The motion is granted as to the OCSPA claims and denied as to Stojka's contract claim.

**Background**

The facts alleged in the complaint (Doc. 33) are assumed true on a Rule 12(b)(6) motion. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Also pertinent at this stage are exhibits attached to the complaint. *See* Fed. R. Civ. P. 10(c); *Witzke v. Femal,* 376 F.3d 744, 749 (7th Cir. 2004). To the extent an exhibit contradicts the complaint's allegations, the exhibit takes precedence. *See Forrest v. Universal Sav. Bank, F.A.,* 507 F.3d 540, 542 (7th Cir. 2007). The following sets forth the facts as favorably to Plaintiffs as the complaint and its exhibits permit.

Abercrombie is a clothing retailer with stores across the United States. In December 2009, Abercrombie conducted a Christmas promotion, promising a $25 gift card to customers who bought at least $100 of merchandise in a single transaction. Stojka purchased approximately $300 of merchandise at an Abercrombie store in Oak Brook, Illinois, and received gift cards with a cumulative value of $75. The gift cards state: "This gift card is redeemable at all Abercrombie & Fitch … locations, Abercrombie.com and abercrombiekids.com. … No expiration date." Stojka gave her gift cards to Boundas as a gift. Boundas attempted to redeem the cards at the Oak Brook store in April 2010, but the store declined, explaining that Abercrombie had voided the cards on or around January 30, 2010, eliminating all remaining value on them. Despite the refusal of her gift cards, Boundas bought about $100 worth of Abercrombie merchandise.

The decision to void the remaining value on the gift cards, despite the "No expiration date" term, was made at Abercrombie's corporate headquarters in Ohio, and the decision was implemented by Abercrombie through a central computer system located in or directed from Ohio. Abercrombie voided more than 200,000 unredeemed gift cards, which together had a face value exceeding $5 million.

Plaintiffs filed this action in the Circuit Court of DuPage County, Illinois. Abercrombie timely removed the case to this court. The operative complaint has four counts: Count I is a breach of contract claim by Stojka; Count II is a breach of contract claim by Boundas; Count III is an OCSPA claim by Stojka; and Count IV is an OCSPA claim by Boundas. Abercrombie has moved to dismiss all but Count II.

**Discussion**

To survive a Rule 12(b)(6) motion, a complaint must overcome "two easy-to-clear hurdles": (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests"; and (2) "its allegations must plausibly suggest that the plaintiff has the right to relief, raising that possibility above a speculative level." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (citation and internal quotation marks omitted). The court need not accept as true "abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Where the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (internal quotation marks omitted).

**I.      Counts III-IV: OCSPA Claims**

Abercrombie contends that Plaintiffs have no viable claim under the OCSPA because the transactions at issue—Stojka's acquisition of the gift cards from Abercrombie, and Boundas's failed attempt to redeem the cards—took place outside Ohio. Plaintiffs respond that the OCSPA extends to consumers like themselves who were injured outside Ohio by an Ohio business. Under the circumstances of this case, Ohio law resolves this dispute in Abercrombie's favor.

The OCSPA provides a private right of action for a consumer against a supplier that "commit[s] an unfair or deceptive act or practice in connection with a consumer transaction." Ohio Rev. Code Ann. § 1345.02(A). A "consumer transaction" is defined as "a sale, lease, assignment, … or other transfer of an item of goods, a service, a franchise, or intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply

any of these things." *Id*. § 1345.01(A). The OCSPA grants jurisdiction to the Ohio Court of Common Pleas and to municipal and county courts "with respect to any act or practice *in this state* covered by [certain provisions of the OCSPA]." *Id*. § 1345.04 (emphasis added).

This jurisdictional provision has been interpreted to impose a territorial limitation on the statute's reach. In *Chesnut v. Progressive Cas. Ins. Co.*, 850 N.E.2d 751 (Ohio App. 2006), the plaintiff, a Louisiana resident, sued Progressive after purchasing a used car in Louisiana from a Louisiana dealer; previously, Progressive had acquired the car from its insured, declared it a total loss, repaired it, and then sold it with a clean title, rather than a salvage title, to the used car dealer. *Id*. at 753-54. The Ohio Court of Appeals held that the plaintiff's claim against Progressive fell outside the OCSPA's territorial scope. The court noted that although Progressive's titling policy and procedures "emanate[d]" from its Ohio headquarters, the operative events themselves—Progressive's adjustment of the previous owner's insurance claim, and the repair, titling, and sale of the car—took place in Louisiana. *Id*. at 756. The court concluded that the plaintiff had no OCSPA claim because "[t]he majority of the circumstances relating to the sale of the salvage vehicle in this case occurred primarily and substantially in Louisiana." *Id*. at 757 (quoting *Gridley v. State Farm Mut. Auto. Ins. Co.*, 840 N.E.2d 269, 275 (Ill. 2005)).

In *Pilgrim v. Universal Health Card, LLC*, 2010 WL 1254849 (N.D. Ohio Mar. 25, 2010), the district court cited *Chesnut* broadly (though not inevitably) for the proposition that "Ohio courts have found that the OCSPA cannot apply to consumers outside the state of Ohio." *Id*. at *3 (citing *Chesnut*, 850 N.E.2d at 755-57). At least two other federal district court decisions from Ohio, and a decision from the Supreme Court of Oklahoma, likewise have held categorically that the OCSPA does not apply to consumers outside Ohio, even where an Ohio

-4-

business bears some responsibility for the alleged misconduct. *See Harvell v. Goodyear Tire & Rubber Co.*, 164 P.3d 1028, 1037 (Okla. 2006) ("While Goodyear may have developed the shop supply fees from its corporate offices in Ohio, in our view any unfair, deceptive or unconscionable conduct toward a consumer occurred where the transaction occurred—when a customer brought an automobile in for service to a service center and was charged a shop supply fee. Accordingly, the Ohio Act is inapplicable to transactions occurring in states other than Ohio."); *Loreto v. Proctor & Gamble Co.*, 737 F. Supp. 2d 909, 917 (S.D. Ohio 2010) (purported class representatives who purchased products in New Jersey "have no standing to pursue claims under the OCSPA," even though products were manufactured and advertised by defendant in Ohio); *Delahunt v. Cytodyne Tech.*, 241 F. Supp. 2d 827, 839 (S.D. Ohio 2003) ("[OCSPA] claims asserted on behalf of proposed class members whose purchase of [the product in question] did not take place in Ohio are barred by the jurisdictional provision of the statute").

If these four decisions—none authoritative like a decision of the Ohio Supreme Court, and none with the substantial weight of a decision of the Ohio Court of Appeals—were correct, Plaintiffs here clearly would have no OCSPA claim, as the gift cards were received and refused in Illinois. Plaintiffs counter with *Brown v. Market Dev., Inc.*, 322 N.E.2d 367 (Ohio Com. Pl. 1974), a state trial court decision holding the OCSPA can cover non-Ohio consumers injured by alleged misconduct committed by an Ohio business. The defendant in *Brown* mailed promotional letters to individuals outside Ohio, informing each that she had won a vacation to Florida or some other prize, subject to payment of a $15 fee. *Id*. at 368. The promotion was a scam; the Attorney General of Ohio sued the defendant, and the defendant responded that the OCSPA did not apply because its alleged misconduct was directed towards non-Ohio residents. The Attorney General replied that the OCSPA applies "to an Ohio supplier who engages in

unconscionable or deceptive practices originating in Ohio, regardless of whether the consumers are in Ohio or outside Ohio." *Id*. at 369. The court agreed with the Attorney General, ruling that the OCSPA applies to "illegal activities conducted within its borders, even though the damaged person may be located outside its borders." *Id*. at 372. *Brown* has been cited for the proposition—contrary to the view expressed in *Harvell*, *Pilgrim*, *Loreto*, and *Delahunt*—that non-Ohio consumers can bring OCSPA claims arising from alleged misconduct committed by businesses in Ohio. *See TolTest, Inc. v. Nelson-Delk*, 2008 WL 1843991, at *10 (N.D. Ohio Apr. 22, 2008) ("The OCSPA applies to the actions of suppliers in Ohio, even if the ultimate subject of the transaction is located outside the state and even if the supplier itself is based outside the state.") (internal quotation marks omitted).

There is no need to choose between these two lines of precedent, as Plaintiffs' OCSPA claim would fail even if the statute's reach extended as far as the *Brown* and *TolTest* courts believed was proper. In *Brown* and *TolTest*, the Ohio defendant dealt individually and directly, from Ohio, with non-Ohio consumers. *See Brown*, 322 N.E.2d at 371-72 ("Defendants concede that … they send their materials to other states from Ohio, and that when a non-Ohio consumer responds to defendants' mailings, the next activity of defendants, if any, is made in Ohio"); *TolTest*, 2008 WL 1843991, at *1 (Michigan consumer dealt directly with business located in Ohio). Under those circumstances, it plausibly could be said, as the Ohio Court of Appeals articulated the governing standard in *Chesnut*, that "the offending conduct took place within the territorial borders of the state of Ohio." 850 N.E.2d at 756 (internal quotation marks omitted).

Plaintiffs cite no decision, and the court is aware of none, applying the OCSPA extraterritorially to a transaction where the Ohio business did not communicate, from Ohio, directly and individually with the non-Ohio plaintiff. Unlike the transactions in *Brown* and

*TolTest*, the transactions in *Harvell*, *Pilgrim*, *Loreto*, and *Delahunt* involved no such communications.  And in *Chesnut*, which does not speak expressly to whether the OCSPA categorically bars application to non-Ohio consumers, all direct communications with and representations to the plaintiff were made in and from Louisiana.  So, while certain passages in *Brown* and *TolTest* conflict with certain passages in *Harvell*, *Pilgrim*, *Loreto*, and *Delahunt* as to whether the OCSPA ever can apply to non-Ohio consumers, the results reached in those six cases and in *Chesnut* are harmonious.

In this case, Stojka's acquisition of the gift cards from Abercrombie, and Boundas's fruitless attempt to redeem the cards, took place in Illinois.  Neither event involved a communication to a non-Ohio consumer directly from Ohio.  The complaint alleges:

> Abercrombie engaged in unfair and deceptive acts and practices … by *stating* that the subject of a consumer transaction, the gift cards had a use for benefit of not expiring, but imposing an expiration date on them; and … *stating* that the subjects of the consumer transactions, the gift cards were of a particular standard, non-expiring, but imposing an expiration date on them.

Doc. 33 at ¶¶ 52, 63 (emphasis added).  The statements in question were made entirely in and from Illinois.  Under *Chesnut*, the fact that the statements resulted from policies formulated in and implemented from Ohio does not bring this case within the OCSPA's scope.  And as in *Chesnut*, "[t]he majority of the circumstances relating to the [acquisition and attempted redemption of the gift cards] in this case occurred primarily and substantially [outside of Ohio]."  850 N.E.2d at 757.

Accordingly, this case does not present the narrow range of circumstances where transactions involving non-Ohio consumers might possibly fall within the OCSPA's scope.  Because Plaintiffs may not seek redress under the OCSPA, their OCSPA claims are dismissed.

## II.     Count I: Stojka's Breach of Contract Claim

Abercrombie also challenges Stojka's contract claim, arguing that her alleged damages are implausible because she gave her gift cards to Boundas and never attempted to redeem them herself.  The argument is rejected at this stage of the litigation.  The complaint plausibly alleges that Stojka was damaged by the fact that she gave Boundas a gift that turned out to be worthless.  Whether that allegation will have sufficient evidentiary support to survive summary judgment, or whether Stojka will qualify as an adequate and typical class representative under Federal Rule of Civil Procedure 23(a), are questions left for another day.

## Conclusion

Abercrombie's motion to dismiss is granted in part and denied in part.  The OCSPA claims (Counts III-IV) are dismissed.  Stojka's breach of contract claim (Count I) may proceed along with Boundas's breach of contract claim (Count II), which Abercrombie did not seek to dismiss.

May 2, 2011

United States District Judge