UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GS TIFFANY BOUNDAS and DOROTHY STOJKA, individually and on behalf of a class, | ) ) ) | |
| Plaintiffs, | ) ) | 10 C 4866 |
| vs. | ) ) | Judge Feinerman |
| ABERCROMBIE & FITCH STORES, INC., an Ohio corporation, | ) ) ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiffs Tiffany Boundas and Dorothy Stojka brought this putative class action in the Circuit Court of DuPage County, Illinois, against Defendant Abercrombie & Fitch Stores, Inc., alleging breach of contract and violation of the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code Ann. § 1345.01 *et seq*. Abercrombie removed the case pursuant to 28 U.S.C. § 1453(b), premising jurisdiction on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). On Abercrombie's motion, the court dismissed the OCSPA claims because the transactions at issue involved non-Ohio consumers and otherwise lacked a substantial connection to Ohio. 2011 WL 1676053 (N.D. Ill. May 2, 2011). Plaintiffs then moved to remand the case to state court, arguing that dismissal of the OCSPA claims reduced the matter in controversy below CAFA's jurisdictional minimum of $5 million. The court denied the motion. 2011 WL 5903495 (N.D. Ill. Nov. 21, 2011).

-1-

Now before the court is Plaintiffs' amended motion for class certification of the contract claims under Federal Rule of Civil Procedure 23. Plaintiffs seek certification of the following nationwide class:

> All people who received Abercrombie & Fitch Stores, Inc. promotional gift cards in hard copy stating "no expiration date" issued as part of a 2009 winter holiday in-store promotion and voided by Abercrombie & Fitch Stores, Inc. on or after January 30, 2010 despite having credit remaining on the gift cards.

Doc. 58 at 1. For the reasons that follow, class certification is granted, though Plaintiffs' proposed class definition is modified and only Boundas will serve as a class representative. *See In re Motorola Sec. Litig.*, 644 F.3d 511, 518 (7th Cir. 2011) ("a district court has the authority to modify a class definition at different stages in litigation"); *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("district courts have broad discretion to modify class definitions, so the district court's multiple amendments merely showed that the court took seriously its obligation to make appropriate adjustments to the class definition as the litigation progressed").

## Discussion

Abercrombie is a clothing retailer with stores across the United States. In a December 2009 promotion, Abercrombie gave a $25 promotional gift card to customers who bought at least $100 of merchandise in a single transaction. Stojka purchased merchandise at an Abercrombie store in Oak Brook, Illinois, and received promotional gift cards with a cumulative value of $75. The cards state: "This gift card is redeemable at all Abercrombie & Fitch … locations, Abercrombie.com and abercrombiekids.com. … No expiration date." Stojka gave her cards to Boundas, who was with Stojka at the time. Boundas attempted to redeem the cards at the Oak Brook store some months later, in April 2010, but the store declined, explaining that

-2-

Abercrombie had voided the cards on or around January 30, 2010, eliminating all remaining value on them. That might appear to be a poor way for a national retailer to treat its customers, but Abercrombie explains that each card was enclosed in a sleeve expressly saying: "$25 gift card expires 1/30/10." Doc. 62 at 3.

To be certified, a proposed class must satisfy the four requirements of Rule 23(a): "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). If Rule 23(a) is satisfied, the proposed class must fall within one of the three categories in Rule 23(b), which the Seventh Circuit has described as: "(1) a mandatory class action (either because of the risk of incompatible standards for the party opposing the class or because of the risk that the class adjudication would, as a practical matter, either dispose of the claims of non-parties or substantially impair their interests), (2) an action seeking final injunctive or declaratory relief, or (3) a case in which the common questions predominate and class treatment is superior." *Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011). Plaintiffs seek to certify only a Rule 23(b)(3) class, so the two other categories will not be addressed. Finally, the class must be "identifiable as a class," meaning that the "class definitions must be definite enough that the class can be ascertained." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).

The putative class representative bears the burden of showing that each requirement is satisfied. *See Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 596 (7th Cir. 1993). "Failure to meet any one of the requirements of Rule 23 precludes certification of a class." *Harriston v. Chi. Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993). Although "as a general principle, a court is

not allowed to engage in analysis of the merits in order to determine whether a class action may

be maintained[,] ... the boundary between a class determination and the merits may not always

be easily discernible," and "the class determination generally involves considerations that are

enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Retired Chi.*

*Police*, 7 F.3d at 598-99 (internal quotation marks omitted); *see also Wal-Mart Stores, Inc. v.*

*Dukes*, 131 S. Ct. 2541, 2551 (2011) (class certification analysis "[f]requently … will entail

some overlap with the merits of the plaintiff's underlying claim").  As the Seventh Circuit

explained, "a district court must make whatever factual and legal inquiries are necessary to

ensure that requirements for class certification are satisfied before deciding whether a class

should be certified, even if those considerations overlap the merits of the case." *Am. Honda*

*Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010); *see also Kartman v. State Farm Mut.*

*Auto. Ins. Co.*, 634 F.3d 883, 889-90 & n.6 (7th Cir. 2011).  The Seventh Circuit has instructed

district courts to exercise "caution" before certifying a class.  *Thorogood v. Sears, Roebuck &*

*Co.*, 547 F.3d 742, 746 (7th Cir. 2008).

## I.      Rule 23(a)

### A.      Rule 23(a)(1): Numerosity

Numerosity is not disputed, as Abercrombie voided nearly 200,000 promotional gift

cards.

### B.      Rule 23(a)(4): Adequacy

The Rule 23(a)(4) adequacy inquiry "consists of two parts: (1) the adequacy of the named

plaintiffs as representatives of the proposed class's myriad members, with their differing and

separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent*

*Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011).  Abercrombie does not challenge class counsel,

and the court independently has determined their adequacy. Abercrombie contends, however, that Boundas and Stojka are inadequate class representatives.

A proposed class representative is inadequate if her interests are "antagonistic or conflicting" with those of the other class representatives or the absent class members, *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), or if she is subject to a defense not applicable to the class as a whole, *see CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011). *See also Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011); *Hardy v. City Optical Inc.*, 39 F.3d 765, 770 (7th Cir. 1994); *Koos v. First Nat'l Bank of Peoria*, 496 F.2d 1162, 1164-65 (7th Cir. 1974). Abercrombie contends that Stojka and Boundas are inadequate because they have "intrinsically antagonistic interests," in that only one of them can recover based on the promotional gift cards given by the former to the latter. Implicitly recognizing that Abercrombie has a fair point—and also that Stojka assigned her rights in the cards to Boundas, a matter addressed in more detail below—Plaintiffs agree to proceed with Boundas as the sole class representative and to voluntarily dismiss Stojka's claims. Doc. 72 at 13, 16 n.3. Abercrombie has no objection to Boundas's adequacy other than her antagonism with Stojka. Doc. 62 at 12-14. Accordingly, the court will accept Plaintiffs' invitation to proceed only with Boundas as the class representative, who with Stojka out of the picture poses no adequacy problems.

## C.    Rule 23(a)(3): Typicality

The Rule 23(a)(3) typicality requirement "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Retired Chi. Police*, 7 F.3d at 597. A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class

members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). As the Seventh Circuit recently held, "typicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *CE Design*, 637 F.3d at 725; *see also Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 150 (3d Cir. 2008) ("Factual differences will not defeat typicality if the named plaintiffs' claims arise from the same event or course of conduct that gives rise to the claims of the class members and are based on the same legal theory."); *Rosario*, 963 F.2d at 1018 ("we look to the defendant's conduct and the plaintiff's legal theory to satisfy Rule 23(a)(3)"). On that metric, Boundas's claims are typical of the proposed class, for like all putative class members, she was deprived of the (alleged) value of her promotional gift cards when Abercrombie voided them on January 30, 2010.

### D. Rule 23(a)(2): Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury" and that "[t]heir claims … depend upon a common contention … of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551 (internal quotation marks omitted). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id*. at 2556 (internal quotation marks and alterations omitted). "Rule 23(a)(2) does not demand that every member of the class have an identical claim," and some degree of factual variation will not defeat commonality provided that common questions yielding common answers can be identified. *Spano*, 633 F.3d at 585; *see also Rosario*, 963 F.2d at 1017-18.

The commonality requirement is easily satisfied here. The contract claim of each putative class member presents at least two common questions: (1) whether a contract was formed between Abercrombie and customers receiving gift cards (or their assignees), and, if so, (2) whether the contract's terms are set forth on the gift card alone (which says "No expiration date"), the sleeve alone (which says "$25 gift card expires 1/30/10"), or the card plus the sleeve. If the answer to the second question is the card plus the sleeve, the contract claim presents a third common question: whether the card trumps the sleeve or vice versa. Those common question are sufficient, in themselves, for purposes of Rule 23(a)(2). *See Keele v. Wexler*, 149 F.3d 589, 594-95 (7th Cir. 1998) (citing, with approval, *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 691 (N.D. Ga. 1983) ("[w]hen viewed in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action"), and *Heartland Commc'ns, Inc. v. Sprint Corp.*, 161 F.R.D. 111 (D. Kan. 1995) (certifying a class where the contracts signed by all class members contained virtually the same provision as the class representative's contract)).

Abercrombie contends that there are no common questions because each customer entered into a different contract with Abercrombie. Doc. 62 at 8-10. This contention rests on two premises. The first is that the factual circumstances under which customers learned of the December 2009 promotion varied from person to person—some saw in-store or Internet-based advertising referencing an expiration date of January 30, 2010; others made their purchases without even knowing about the promotion; while still others learned of the promotion from fellow customers or store personnel. The second premise is that the terms of any particular customer's contract with Abercrombie depends on those factual circumstances, meaning that the

contracts' terms are different and thus do not present common questions susceptible to classwide resolution at trial. Although the first premise may be correct, the second is not.

"Analysis of predominance under Rule 23(b)(3)," and thus of commonality under Rule 23(a)(2), "begins … with the elements of the underlying cause of action." *Messner v. Northshore Univ. HealthSys.*, __ F.3d __, 2012 WL 129991, at *8 (7th Cir. Jan. 13, 2012) (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011)). To prevail on a contract claim, a plaintiff must show "(1) that a contract existed; (2) that the plaintiff fulfilled his contractual obligations; (3) that the defendant unlawfully failed to fulfill his obligations; and (4) that damages resulted from this failure." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 561 n.3 (6th Cir. 2007) (Ohio law); *accord Asset Exch. II, LLC v. First Choice Bank*, 953 N.E.2d 446, 454-55 (Ill. App. 2011) (Illinois law). Where there are objective indicia of the contract's terms—here, the text on the cards, the text on the sleeves, or both—the manner in which parties become aware of a contractual opportunity and their subjective perceptions of the resulting contract are not relevant. *See Nat'l Prod. Workers Union Ins. Trust v. Cigna Corp.*, 665 F.3d 897, 901 (7th Cir. 2011) ("In assessing whether contracting parties have mutually assented to a contract, Illinois courts have long cautioned that the parties' subjective intentions are irrelevant. Rather, courts must evaluate mutual assent based on the objective conduct of the parties.") (internal citation omitted); *216 Jam. Ave. LLC v. S&R Playhouse Realty Co.*, 540 F.3d 433, 440 (6th Cir. 2008) ("As in most jurisdictions, Ohio law does not require contracting parties to share a subjective meeting of the minds to establish a valid contract; otherwise, no matter how clearly the parties wrote their contract, one party could escape its requirements simply by contending that it did not understand them at the time."). This is not a fraud case, where it matters precisely what a customer saw or was told or perceived, and

thus where factual variations of the sort noted by Abercrombie pose obstacles to class

certification.  *See Thorogood*, 547 F.3d at 746-48; *Oshana*, 472 F.3d at 513-14; *Szabo v.*

*Bridgeport Machs., Inc.*, 249 F.3d 672, 674, 677-78 (7th Cir. 2001); *In re Sears, Roebuck & Co.*

*Tools Mktg. & Sales Practices Litig.*, 2007 WL 4287511, at *6 (N.D. Ill. Dec. 4, 2007).

Accordingly, when Abercrombie customers made qualifying purchases and received

promotional gift cards, contracts—*identical* contracts—were formed.  *See BPI Energy Holdings,*

*Inc. v. IEC (Montgomery), LLC*, 664 F.3d 131, 136 (7th Cir. 2011) ("[a] document can be a

contract without calling itself a contract").  Or maybe contracts were not formed; that is one of

the common questions to be resolved on a classwide basis.  But if contracts were formed, they

were identical, with the only open question being whether the cards expired on January 30, 2010,

in which case Abercrombie did not breach, or never expired, in which case it did.

Abercrombie suggests that the contracts are not necessarily identical given the possibility

that some customers received cards without a sleeve.  Doc. 62 at 8 (hypothesizing a customer

who "receive[d] a Promotion Card but without a sleeve"); 12/14/2011 Tr. at 7 (arguing that

"Was there a sleeve?" is a "commonality problem[]").  If it were true that some customers

received cards without a sleeve, then the contract claims of customers whose cards came with a

sleeve would present a question—whether the card trumps the sleeve, or vice versa—not

presented by the claims of customers who received just a card.  But for all the record shows, the

cards all came with a sleeve.  As Abercrombie explains in its class certification brief,

"Abercrombie directed its sales associates to enclose each of the Promotion Cards in a sleeve

that expressly stated: '**$25 gift card expires 1/30/10.**' … Sales associates were reminded to use

only the sleeves containing the January 30, 2010 expiration date for Promotion Cards and not the

regular, for-purchase gift card sleeves."  Doc. 62 at 3 (emphasis in original); *see also id*. at 5 n.5

("the Promotion Cards must have been issued to Stojka in sleeves disclosing the expiration date").  The instruction sheet Abercrombie provided to its sales staff during the December 2009 promotion said: "**the promo gift card MUST be placed in the <u>PROMO GIFT CARD SLEEVE</u> that indicates the expiration date**."  Doc. 62-1, Exh. B (emphasis in original).  It lies poorly in Abercrombie's mouth to assert that class certification should be denied because its own sales associates might possibly have disobeyed its exceedingly clear and emphatically delivered instructions to place each card in a sleeve; this is particularly so because Abercrombie provides no evidence whatsoever of any such disobedience.

Abercrombie also argues that commonality is defeated because some class members (like Boundas) received their cards as a gift from actual Abercrombie customers, while others received their cards directly from Abercrombie upon making a qualifying purchase.  Doc. 62 at 6-8.  This does not pose an obstacle to commonality.  An assignee like Boundas steps into the shoes of an assignor like Stojka, and thus takes the cards subject to whatever terms and conditions applied to the assignor.  *See Ford Motor Credit Co. v. Ryan*, 939 N.E.2d 891, 920 (Ohio App. 2010) ("The assignee stands in the shoes of the assignor and succeeds to all the rights and remedies of the latter.") (internal quotation marks omitted); *Brandon Apparel Grp. v. Kirkland & Ellis*, 887 N.E.2d 748, 756 (Ill. App. 2008) ("The assignment transfers to the assignee all the right, title or interest of the assignor in the thing assigned.  Thus, the assignee stands in the 'shoes' of the assignor.") (internal citations and internal quotation marks omitted); Murray on Contracts § 138 (4th ed. 2001) ("Whereas the promisor had owed the duty to the assignor who had the correlative right, the duty is now owed to the assignee who has the right to receive a duplicative performance from the promisor.").  Abercrombie does not dispute, and in fact admits, that Boundas is Stojka's assignee.  Doc. 62 at 13 ("when [Stojka] gave the

Promotion Cards to Boundas, … Boundas (as assignee) acquired any right to performance by Abercrombie"). Thus, as putative class counsel correctly acknowledged at the class certification hearing, if the sleeve that accompanied Stojka's cards allowed Abercrombie to void the cards' balance on January 30, 2010, Boundas would be subject to the same limitation, even if Stojka gave Boundas the card but not the sleeve. *See* 12/14/2011 Tr. at 4-7. The same holds, of course, for any class member who received a promotional card from somebody else. *See id*. at 22 (where putative class counsel acknowledged the point).

## II.    Rule 23(b)(3)

A proposed class satisfies Rule 23(b)(3) if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and … a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Factors pertinent to predominance and superiority include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Ibid*.

### A.    Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). While similar to the Rule 23(a)(2) commonality requirement, the predominance requirement is "far more demanding." *Id*. at 624. Predominance is not satisfied where liability determinations are individual and fact-intensive. *See Kartman*, 634 F.3d at 891.

Predominance also fails where "affirmative defenses will require a person-by person evaluation of conduct to determine whether [a defense] precludes individual recovery." *Clark v. Experian Info., Inc.*, 233 F.R.D. 508, 512 (N.D. Ill. 2005), *aff'd*, 256 F. App'x 818 (7th Cir. 2007); *see also Myers v. Hertz Corp.*, 624 F.3d 537, 551 (2d Cir. 2010) ("while it is well established that the existence of a defense potentially implicating different class members differently does not *necessarily* defeat class certification, it is equally well established that courts must consider potential defenses in assessing the predominance requirement") (internal citations omitted).

Predominance is satisfied here. As noted above in discussing commonality, the most significant issues in this case are: (1) whether Abercrombie was contractually obligated to honor the promotional gift cards; (2) if so, whether the contract's terms are set forth on the gift card alone, the sleeve alone, or the card plus the sleeve; and (3) if the terms are set forth on the card plus the sleeve, whether the card trumps the sleeve or vice versa. Those issues can be resolved on a classwide basis, without any individual variation. *See Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38-42 (1st Cir. 2003) (reversing the decertification of a class pursuing claims founded on a form contract); *Keele*, 149 F.3d at 594-95. Most of Abercrombie's arguments against predominance mirror their arguments against commonality, which are without merit for the reasons set forth above. The arguments directed exclusively against predominance fail to persuade.

First, Abercrombie contends that proof of "reliance and causation" are "inherently individualized." Doc. 62 at 10 (internal quotation marks omitted). Abercrombie explains that the proposed class "fails to exclude an entire group of would-be members whose Promotion Cards could hardly have 'caused' damages—for example, those who knew the Promotion Cards expired on January 30 but chose not to use them before that date, those who lost or threw away

their Promotion Cards, or those who received a refund of the expired funds on their Promotion Cards." *Id*. at 11. These problems are either nonexistent or overstated. Individuals who received a refund for the voided balance on their cards suffered no injury, have no conceivable claim against Abercrombie, and therefore will not be part of the class. *See Messner*, 2012 WL 129991, at *16-17; *Oshana*, 472 F.3d at 514. Nor will individuals who lost their cards be part of the class; because their injuries have nothing to do with Abercrombie, they also have no conceivable claim against the company. The same holds for individuals who threw away their cards, *except* for those who did so because they were told that the cards had been voided, as their alleged injuries were caused by Abercrombie.

Abercrombie's reference to individuals who "knew the Promotion Cards expired on January 30" does not advance its cause. Because the question whether the cards expired has yet to be decided, no cardholder could *know* that the cards expired in January 2010. The category of individuals Abercrombie means to describe are those who *believed* the cards expired on January 30, 2010. Even if that category includes more than a handful of persons—and there is no evidence of record that anybody held that belief—their inclusion in the class does not pose an individual issue, let alone one that predominates over the common issues. As explained above, a customer's subjective expectations regarding the contract's terms are not pertinent to the contract claim. *See Nat'l Prod. Workers Union Ins. Trust*, 665 F.3d at 901. The contract means what the contract means, regardless of whether a cardholder believes that the card is worth more or less than what the contract says the card is worth.

Second, Abercrombie perfunctorily argues in a footnote that predominance is defeated because the class members' "disparate claims" must be considered "under the laws of multiple jurisdictions." Doc. 62 at 9 n.10. To support this submission, Abercrombie cites *Pastor v. State*

-13-

*Farm Mutual Automobile Insurance Co.*, 2005 WL 2453900 (N.D. Ill. Sept. 30, 2005), where the district court held that "[b]ecause the class members' claims must be adjudicated under varying state laws, a single nationwide class is not manageable." *Id*. at *10. Although the Seventh Circuit affirmed the district court's denial of class certification, it did so on other grounds and rejected the district court's analysis. *See Pastor v. State Farm Mut. Auto. Ins. Co.*, 487 F.3d 1042, 1046-47 (7th Cir. 2007). Pertinent here, the Seventh Circuit reasoned that the parties' dispute over the contract's meaning would be resolved the same way under any State's laws. *See id*. at 1046. Because Abercrombie made no effort to show that variations in state contract law would require that the claims of card holders in different States be resolved differently, the same result holds here. Abercrombie will not be foreclosed from again pressing this issue before trial, but only if it can actually show a material variation in how different States would resolve the contract issues posed by this case.

### B. Superiority

The superiority requirement is satisfied. "[C]lass certification is a 'sensible and legally permissible alternative to … individual suits each of which would cost orders of magnitude more to litigate than the claims would be worth to the plaintiffs.'" *Pella Corp. v. Saltzman*, 606 F.3d 391, 393 (7th Cir. 2010) (quoting *Thorogood*, 547 F.3d at 748). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997); *see also Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir.

-14-

2004) ("only a lunatic or a fanatic sues for $30"). That is precisely the circumstance presented here, given the small recoveries ($25, $50, $75, or $100) available to each class member.

The four factors expressly set forth in Rule 23(b)(3) all support finding superiority. First, "the class members' interests in individually controlling the prosecution or defense of separate actions," Fed. R. Civ. P. 23(b)(3)(A), are minimal, as the amount at stake for each class member is very small. Second, because no other cases involving the Abercrombie promotional gift cards have been brought to the court's attention, "the extent and nature of any litigation concerning the controversy already begun by or against class members" is not a factor. Fed. R. Civ. P. 23(b)(3)(B). Third, "the desirability or undesirability of concentrating the litigation of the claims in the particular forum" is not a factor, as the Northern District of Illinois is no better and no worse than any other forum. Fed. R. Civ. P. 23(b)(3)(C). Finally, "the likely difficulties in managing a class action" in this case are minimal given the predominance of common issues and the relative ease of administering the claims process. Fed. R. Civ. P. 23(b)(3)(D). Accordingly, a class action would be superior to other methods of resolving this controversy between Abercrombie and those allegedly injured when promotional gift cards saying "No expiration date" were voided on January 30, 2010.

## III.   Definiteness and Ascertainability

As noted above, a class definition "must be definite enough that the class can be ascertained." *Oshana*, 472 F.3d at 513; *see also Jamie S. v. Milwaukee Pub. Sch.*, __ F.3d __, 2012 WL 336170, at *11-12 (7th Cir. Feb. 3, 2012); 7A Wright, Miller & Kane, Federal Practice and Procedure § 1760, at 139-40 (3d ed. 2005) ("the requirement that there be a class will not be deemed satisfied unless the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member"). "An

identifiable class exists if its members can be ascertained by reference to objective criteria."
Manual for Complex Litigation § 21.222, at 270 (4th ed. 2004); *see also Hinman v. M & M
Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 806 (N.D. Ill. 2008) ("a class is sufficiently definite if its
members can be ascertained by reference to objective criteria and may be defined by reference to
defendants' conduct").  Moreover, "[a]lthough the identity of individual class members need not
be ascertained before class certification, the membership of the class must be ascertainable"
because "individual class members must receive the best notice practicable and have an
opportunity to opt out."  Manual for Complex Litigation, *supra*, § 21.222, at 270 (class
definition "must be precise, objective, and presently ascertainable"); *see also Adashunas v.
Negley*, 626 F.2d 600, 603-04 (7th Cir. 1980).

Abercrombie argues that class membership is not ascertainable because, with the
exception of a small proportion of individuals identified by its records, the class members cannot
presently be identified.  Doc. 62 at 15-16.  The argument's premise is that absent class members'
actual identities must be ascertained before a class can be certified.  That premise is incorrect; as
just noted, "the identity of individual class members need not be ascertained before class
certification."  Manual for Complex Litigation, *supra*, § 21.222, at 270; *see also Pella*, 606 F.3d
at 394 (acknowledging that "at the outset of the case many members may be unknown"); 7A
Wright, Miller & Kane, *supra*, § 1760, at 736 ("the class does not have to be so ascertainable
that every potential member can be identified at the commencement of the action").  It is enough
that the class be ascertain*able*.  The class in this case consists primarily of individuals holding an
Abercrombie promotional gift card whose value was voided on or around January 30, 2010.
That criterion is as objective as they come.  The class also includes individuals who threw away
their cards because they were told that the balances had been voided.  That criterion is not as

-16-

objective as actually holding a physical card, but anybody claiming class membership on that

basis will be required to submit an appropriate affidavit, which can be evaluated during the

claims administration process if Boundas prevails at trial.  *See* 3 Conte & Newberg, Newberg on

Class Actions § 10:12, at 508 (4th ed. 2002) ("Methods of claim verification may also vary with

the ease of documenting claims by individual members, and also with the size of the claims

involved.  A simple statement or affidavit may be sufficient where claims are small or are not

readily amenable to verification."); *Carrera v. Bayer Corp.*, 2011 WL 5878376, at *4 (D.N.J.

Nov. 22, 2011).

Finally, Abercrombie contends that "without names and addresses" of the absent class

members, "notice by mail cannot be effectuated."  Doc. 62 at 16.  Abercrombie is right, at least

with respect to the class members not identified by its records.  But the Seventh Circuit has

expressly held that the feasibility of notice by mail is not a prerequisite to class certification:

"When individual notice is infeasible, notice by publication in a newspaper of national

circulation … is an acceptable substitute."  *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786

(7th Cir. 2004); *see also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950)

("This Court has not hesitated to approve of resort to publication as a customary substitute in

another class of cases where it is not reasonably possible or practicable to give more adequate

warning."); *Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139, 145 (N.D. Ill.

2010) ("In instances where the names and addresses of class members are not easily

ascertainable, notice by publication alone continues to find support in more recent case law.").

Notice also might be provided, among other places, on Abercrombie's website or at

Abercrombie store locations.  *See Mirfasihi*, 356 F.3d at 786; *see also In re Bluetooth Headset*

*Prods. Liab. Litig.*, 654 F.3d 935, 940 (9th Cir. 2011); *Adams v. S. Farm Bureau Life Ins. Co.*,

-17-

493 F.3d 1276, 1280 (11th Cir. 2007); Manual for Complex Litigation, *supra*, § 21.311, at 288 ("Posting notices on dedicated Internet sites, likely to be visited by class members and linked to more detailed certification information, is a useful supplement to individual notice, might be provided at a relatively low cost, and will become increasingly useful as the percentage of the population that regularly relies on the Internet for information increases.").

Contrary to Abercrombie's suggestion, *In re Aqua Dots Products Liability Litigation*, 654 F.3d 748 (7th Cir. 2011), does not establish that certification is inappropriate unless individual notice is feasible. There were several obstacles to class certification in *Aqua Dots*, including Rule 23(a)(4) adequacy and Rule 23(b)(3) predominance. *See id*. at 752. Central to the court's discussion of notice was the fact that the defendant company had already engaged in a highly publicized recall that led 500,000 consumers to obtain refunds and that still was available. *Id*. at 751. This led the Seventh Circuit to say: "Notice [to the class] would be by publication, yet the recall was widely publicized. Why bear these costs a second time?" *Ibid*. Under those circumstances, notice by publication made little sense. In so holding, *Aqua Dots* did not purport to overturn its 2004 decision in *Mirfasihi* or certainly the Supreme Court's decision in *Mullane*, both of which recognize that notice by publication is an appropriate means of providing notice to a certified class.

### Conclusion

For the foregoing reasons, the court certifies a class to pursue the contract claim against Abercrombie. Rule 23(c)(1)(B) states: "An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B); *see Ross v. RBS Citizens, N.A.*, __ F.3d __, 2012 WL 251927, at *2-5 (7th Cir. Jan. 27, 2012). The class is defined as follows:

Persons who possess Abercrombie & Fitch Stores, Inc. promotional gift cards in hard copy stating "No expiration date" that were issued as part of a 2009 winter holiday in-store promotion and that were voided by Abercrombie on or after January 30, 2010, *and* persons who discarded such cards because they were told that the cards expired or had been voided, but *not* persons who received a refund of the expired balance on their cards, *not* persons who lost their cards, *not* persons who discarded their cards for reasons other than having been told that the cards expired or had been voided, and *not* persons who gave their cards to somebody else.

The claim to be tried is whether Abercrombie committed breach of contract when it voided the promotional gift cards referenced in the class definition. The subsidiary issues and defenses are: (1) whether Abercrombie was contractually obligated to honor the promotional gift cards; (2) if so, whether the contract's terms are set forth on the gift card alone, the sleeve alone, or the card plus the sleeve; and (3) if the terms are set forth on the card plus the sleeve, whether the card trumps the sleeve or vice versa. Boundas is appointed as class representative. Stojka's claims are dismissed. Pursuant to Rule 23(g), Vincent DiTommaso and Peter Lubin of DiTommaso Lubin, P.C., and James Shedden, Tony Kim, and Matthew Burns of Schad, Diamond & Shedden, P.C., are appointed as class counsel. The parties are respectfully requested to confer regarding class notice and, if agreement cannot be reached, are requested to submit their respective proposals to the court before the status hearing scheduled for March 15, 2012.

March 7, 2012

_____
United States District Judge