IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GS TIFFANY BOUNDAS, individually and on behalf of a class, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 10 C 04866 |
| ABERCROMBIE & FITCH STORES, INC., an Ohio corporation, | ) ) ) | Judge John J. Tharp, Jr. |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, GS Tiffany Boundas, individually and on behalf of a class, alleges that Abercrombie & Fitch Stores, Inc. ("Abercrombie") breached a contract it had made with all members of the class when it voided the value of a number of promotional gift cards that Abercrombie had given class members in late 2009 in exchange for their purchases of at least $100 worth of goods. Boundas now moves for summary judgment. For the following reasons, Boundas's motion is denied.

## BACKGROUND[1]

Abercrombie is a clothing retailer with stores across the United States, including numerous locations in Illinois. BSOF ¶ 2. From late November 2009 through late December 2009, Abercrombie held a holiday promotion, through which customers were eligible to receive a $25 gift card for every $100 spent in a single transaction at an Abercrombie retailer. ASOF ¶ 1.

---

[1] The Court takes the following facts from Boundas's Statement of Material Facts (Dkt. 124) ("BSOF"), where undisputed, from Abercrombie's Response to Boundas's Statement of Material Facts (Dkt. 126) ("A Resp."), Abercrombie's Statement of Additional Material Facts (Dkt. 126) ("ASOF"), where undisputed, and Boundas's Response to Abercrombie's Statement of Additional Material Facts (Dkt. 130) ("B Resp.").

Boundas and Abercrombie agree that the terms of the holiday promotion were: (1) "Receive a $25 gift card with every $100 purchase;" (2) "excludes gift card purchases;" and (3) "$25 gift card expires 1/30/10." ASOF ¶ 2. Abercrombie displayed signs with the promotional terms throughout its stores and advertised the terms on its website, Facebook page, and via email. ASOF ¶¶ 3, 5. Additionally, Abercrombie distributed the gift cards to qualifying customers in a sleeve that stated, "$25 gift card expires 1/30/10." ASOF ¶ 6.

On December 15, 2009, Boundas went shopping with her daughter, Taylor, and her friend, Dorothy Stojka, at the mall in Oakbrook, Illinois. ASOF ¶ 7. It is undisputed that neither Stojka nor Boundas knew of the promotion before entering Abercrombie that day. ASOF ¶ 8. The women spent time in the girls' section, the dressing room, and in line for the cashier. ASOF ¶¶ 9-11. The parties agree that, despite the presence of signs advertising the promotional terms in the front of the store, in the girls' section, near the dressing rooms, and at the cashier counter, Stojka and Boundas do not recall viewing any of these signs. ASOF ¶ 12. Stojka and Boundas first learned about the promotion when the Abercrombie salesclerk provided Stojka with two gift cards worth a total of $75 in exchange for her purchase of $328.49 of Abercrombie merchandise.[2] ASOF ¶¶ 14-15. Stojka did not read the gift cards, but immediately handed them to Boundas as a gift.[3] ASOF ¶¶ 16-17. Although Boundas did not read the gift cards immediately, *see* ASOF ¶ 20, both parties agree that the back of the gift cards displayed the

---

[2] The record does not reflect how the $75 total was divided between the two gift cards.

[3] The parties do not dispute that the gift cards are transferrable bearer instruments that may be used by whoever is in possession of the gift cards. *See* A Resp. ¶ 11. Nor does Abercrombie assert any legal argument based on the fact that Stojka, rather than Boundas, made the purchases that prompted Abercrombie to issue the gift cards. Accordingly, the Court ignores that distinction and, for simplicity, proceeds on the assumption that Boundas should be treated as the Abercrombie customer who made the purchases qualifying for issuance of the cards.

phrase "no expiration date" and that the text on the gift cards did not refer to the in-store signs, the sleeves, or the promotional terms. A Resp. ¶¶ 20-21.[4]

In April 2010, Boundas attempted to redeem the gift cards at an Abercrombie store in Oakbrook, Illinois (presumably the same store that issued the cards, though the record does not say).[5] A Resp. ¶ 16. When she tried to use the gift cards, an Abercrombie salesclerk informed Boundas that the value of the gift cards had been voided on January 30, 2010. A Resp. ¶ 17. Boundas completed her purchase of approximately $100 worth of merchandise without use of the gift cards. B Resp. ¶ 21. Shortly thereafter, Boundas emailed Abercrombie's customer service department to complain about the voiding of value on her gift cards. Opp. to Class Cert., Ex. K, Dkt. 62-1. In her April 20, 2010 email to Abercrombie's customer service department, Boundas acknowledged that she "threw away the sleeve because [she has] a special area where [she] keep[s her] cards" (although Boundas now claims to have no recollection of whether or not the gift cards came in the sleeve bearing the terms of the promotion). *Id.*; ASOF ¶¶ 19, 22.

---

[4] The parties agree that the following text was printed on the gift cards that Boundas received:

> This gift card is redeemable at all Abercrombie & Fitch/abercrombie locations, Abercrombie.com and abercrombiekids.com. This card may not be used for payment on any credit card account, to purchase another gift card, towards previously purchased merchandise, and is not redeemable for cash unless otherwise required by applicable law. If lost, stolen, or destroyed, Abercrombie may replace this card upon satisfactory proof of purchase. The replacement card will be the value of the gift card at the time Abercrombie receives your report of loss, theft, or unauthorized use. Purchases in a currency different than the currency of this card will be subject to an exchange rate conversion on the day of payment. No expiration date.

A Resp. ¶ 14.

[5] Abercrombie asserts that Boundas has been inconsistent as to whether she attempted to redeem one gift card or multiple gift cards. A Resp. ¶ 16. That this fact is disputed is not relevant to the issue in this case: whether or not the gift card was a contract.

The record does not describe Abercrombie's response, but it could not have been positive because Boundas then filed a class action complaint in DuPage County, Illinois, alleging breach of contract and violation of the Ohio Consumer Sales Practice Act (Abercrombie is an Ohio corporation) because of Abercrombie's failure to adhere to the printed expiration date on the gift cards. Dkt. 1, Ex. A. Abercrombie removed the case to federal court pursuant to 28 U.S.C. § 1332(d)(2).[6] BSOF ¶ 3. The operative complaint (the Second Amended Complaint, or "SAC") alleges four counts: two counts of breach of contract and two counts of violation of the Ohio Consumer Sales Practices Act.[7] *See* Sec. Am. Compl., Dkt. 33. After dismissing all counts except Boundas's claim for breach of contract, *see* Dkt. 50 at 8, the Court certified a nationwide class defined as:

> Persons who possess Abercrombie & Fitch Stores, Inc. promotional gift cards in hard copy stating "No expiration date" that were issued as part of a 2009 winter holiday in-store promotion and that were voided by Abercrombie on or after January 30, 2010, *and* persons who discarded such cards because they were told that the cards expired or had been voided, but *not* persons who received a refund of the expired balance on their cards, *not* persons who lost their cards, *not* persons who discarded their cards for reasons other than having been told that the cards expired or had been voided, and *not* persons who gave their cards to somebody else.

Order Granting Class Cert. at 19, Dkt. 86.[8] After Abercrombie's petition for leave to file an interlocutory appeal pursuant to Rule 23(f) was denied, Dkt. 91, notice was provided to the class

---

[6] Jurisdiction is based on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), as explained in the Court's Order Denying Remand, Dkt. 74.

[7] One count of breach of contract and one count of violation of the Ohio Consumer Sales Practices Act were on behalf of Boundas and the other two counts were on behalf of Stojka. *See* Sec. Am. Compl., Dkt. 33. Stojka's claims were dismissed prior to class certification. *See* Order Part. Granting Mot. to Dismiss, Dkt. 50; Order Granting Class Cert. at 5, Dkt. 86.

[8] Shortly after this order was entered, this case was reassigned to this Court's initial docket from the docket of District Judge Gary Feinerman.

members, Dkt. 114. Boundas subsequently moved for summary judgment, claiming that the undisputed evidence establishes all of the elements of her breach of contract claim. Mem. in Supp. ¶ 3, Dkt. 123.

## DISCUSSION

Boundas and the class's breach of contract claim is based on Abercrombie's voiding of the value of the promotional gift cards distributed to class members in November and December 2009. To prevail on a summary judgment motion, the movant must demonstrate that there is no genuine dispute as to any material fact and that she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding Boundas's motion for summary judgment, then, the Court construes all disputed facts and draws all reasonable inferences in favor of Abercrombie, the nonmoving party. *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015). Summary judgment is only appropriate when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id*. Based on the undisputed facts in the record, Boundas has not met her burden to demonstrate that no reasonable jury could find for Abercrombie. Indeed, it appears that judgment in favor of Abercrombie may be warranted. Boundas's summary judgment motion is therefore denied.

To prevail on a breach of contract claim under Illinois law,[9] Boundas must demonstrate: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007) (*citing W.W. Vincent & Co. v. First Colony Life Ins. Co.,* 351 Ill. App. 3d 752, 759, 814 N.E.2d 960, 967 (2004)). In Illinois, the issue of whether

---

[9] The parties do not dispute that Illinois law governs this breach of contract claim. *See* Mem. in Opp. at 5, Dkt. 125; *Auto–Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies.").

5

a contract exists is usually one for the finder of fact. *See Nat'l Prod. Workers Union Ins. Trust v. Cigna Corp.*, 665 F.3d 897, 902 (7th Cir. 2011) (*citing Prignano v. Prignano,* 405 Ill. App. 3d 801, 810, 934 N.E.2d 89, 100 (2010)). Boundas has failed to present undisputed facts establishing that Abercrombie entered into a contract with class members to honor the 2009 holiday promotion gift cards indefinitely.

Under Illinois law, a valid and enforceable contract requires an offer, acceptance, consideration, and mutual assent. *Nat'l Prod. Workers*, 665 F.3d at 901 (*citing Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 528 (7th Cir. 2003)). Here, Boundas contends that Abercrombie's holiday promotion offer was an invitation to form a unilateral contract,[10] which Boundas accepted by performance, *i.e.* purchasing over $100 worth of goods, thereby obligating Abercrombie to deliver what was promised in the promotion. Mem. in Supp. ¶¶ 17-18 ("Abercrombie's offer was . . . that if the customer bought the required amount of goods, Abercrombie would give the customer a gift card."). The consideration for Abercrombie's issuance of the gift cards, she acknowledges, was the purchase of the requisite amount of merchandise: "Abercrombie . . . delivered to them the Gift Cards in consideration for their purchase of at least $100 worth of Abercrombie's merchandise." SAC ¶ 40; *see also* ¶ 44 ("Abercrombie . . . deliver[ed] Gift Cards to such individuals in consideration for their purchases of at least $100 worth of Abercrombie's merchandise."). And by giving Boundas the gift cards, Boundas states that Abercrombie discharged its obligation under the contract. Reply at ¶ 21, Dkt. 131 ("Abercrombie performed its obligation under the contract by giving the buyers a gift card.").

---

[10] A unilateral contract is one in which "the offeror waives formal acceptance; it is enough that the offeree performs as specified in the offer; performance and acceptance merge." *Patel v. Am. Bd of Psychiatry & Neurology, Inc.*, 975 F.2d 1312, 1314 (7th Cir. 1992).

The question, then, is whether the terms of the contract between Abercrombie and its qualifying customers promised a gift card that was valid through January 30, 2010, or one that had no expiration date. The allegations of the SAC, which construe the sales transaction between Boundas and Abercrombie as an offer and acceptance, present a problem for the class, because they posit that Abercrombie's offer comprised the terms of its holiday promotion—a promotion that stated (in its entirety so far as the record reveals): spend $100, get a $25 gift card valid through January 30, 2010. SAC ¶¶ 12-17, 44; B Resp. ¶ 2. Boundas's pleadings and the evidence of record thus establish that she accepted an offer that provided an expiration date for the promised gift card.

In an effort to avoid this implication, Boundas resorts to an untenable theory that there are in fact two contracts in play: the contract formed when customers accepted Abercrombie's offer of a gift card in exchange for the purchase of $100 worth of merchandise and a separate contract embodied in the gift card itself. Boundas disavows any intention to argue that there are multiple contracts, but that is plainly what she does:

> Abercrombie says that Plaintiffs are now espousing a new dual contract theory. This is not correct. What Plaintiff stated was that Abercrombie made an offer, it was accepted when the Plaintiff made her purchase, and Abercrombie in discharging its obligation, gave the Plaintiff a gift card. ***The gift card is a separate contract.*** The gift card is a promise by the merchant to redeem the gift card for merchandise in an amount equal to the value of the gift card.

Reply at 5 (emphasis added); *see also* Mem. in Supp. ¶ 31 ("The gift card delivered is a new promise by Abercrombie. It is a separate contract . . . ."). And because the gift cards constitute separate contractual agreements by Abercrombie, Boundas argues, they include only the terms set forth on the cards themselves—most notably the term that states "no expiration date."

Boundas's separate contract theory goes off the rails almost immediately, however, because she fails to explain how Abercrombie's issuance of the gift card created a new agreement between the parties. If the gift cards constituted separate and distinct contracts from the holiday promotion contract, then they, too, must meet the elements of contract formation. Boundas, however, has not presented any evidence of acceptance of the "gift card contract," other than the actual physical act of receiving the cards in hand. Nor has she presented evidence of the consideration that she and the class members exchanged to form the "gift card contract." Boundas provided no additional consideration in exchange for Abercrombie's promise to honor the gift cards; as explained (and as Boundas acknowledges), the gift cards were part of the exchange of consideration supporting the holiday promotion contract, and providing the cards "discharged" Abercrombie's obligation under that contract. As such, the gift cards were a component of that contract, not a separate an independent contract.[11]

It is precisely for this reason that the Sixth Circuit rejected the gift-card-as-separate-contract argument that Boundas now advances; Abercrombie's insurer advanced the same argument in an attempt to avoid coverage under an insurance policy exclusion applicable to "liability assumed under a contract." Applying Ohio law in *ACE European Group, Ltd. v. Abercrombie & Fitch Co.*, —F. App'x—, 2015 WL 4758156 (6th Cir. Aug. 13, 2015), the Sixth Circuit explained:

> [C]ontracts are legally enforceable agreements consisting of—among other things—offer, acceptance, and consideration. Under this definition, we do not understand the promotional gift cards to be "contracts" within the meaning of [the policy exclusion]. Rather, the cards are contract components; they form part of the consideration exchanged in the sales contracts entered during Abercrombie's Christmas promotion.

---

[11] Boundas does not, and cannot, argue that the text on the gift cards memorialized the terms of her sales contract with Abercrombie; that text makes no reference to the terms of the promotion or sale.

*Id.* at *2 (internal citation omitted). Illinois law is no different; a contract requires offer, acceptance, and consideration. *See Nat'l Prod. Workers*, 665 F.3d at 901. If the issuance of the gift cards created a new contract, as Boundas claims, she must present evidence that Abercrombie's customers incurred some reciprocal obligation. *See Voelker*, 353 F.3d at 528 (Plaintiff "does not point to alleged facts that, if true, would allow a jury to find that [plaintiff] incurred a reciprocal obligation; *i.e.*, [plaintiff] has neglected the element of consideration."). Boundas has offered nothing in this regard.

Viewed another way, what Boundas essentially argues is that the sales contract she entered into with Abercrombie when she paid for her merchandise and received the cards simply did not specify an expiration date for the gift cards. Abercrombie, she maintains, was free to put any expiration date it wished on the cards (whether January 30, 2010, or some other date), but was bound by whatever date it chose. Mem. in Supp. ¶ 32. Imagine, however, the hue and cry from customers had Abercrombie voided the cards on January 15, 2010, rather than on January 30, as the advertised terms of the promotion stated. Boundas argues that "advertisements are not part of contracts," *id.* at ¶ 30, but that statement is not entirely correct. It is generally held that an advertisement itself does not constitute an offer, but when a customer offers to perform on the basis of advertised terms, the transaction that ensues is deemed to embody those terms. Thus, in *Kim v. Carter's Inc.*, 598 F.3d 362 (7th Cir. 2010), the Seventh Circuit rejected the class claim of retail customers who argued that a retailer was required (for reasons not relevant here) to discount the price of clothing beyond the price advertised in the store, holding that when a customer purchases goods in accordance with advertised terms, a sales contract based on those terms is formed. *Id.* at 364. To hold otherwise, the Court explained, would have rendered meaningless the advertised price terms. *Id.* So too here: accepting Boundas's argument would

render meaningless one of the three advertised terms of Abercrombie's promotion—terms that she (and other class members) agreed to when completing the sale transaction.

In short, Abercrombie did not enter into a new contractual agreement when it issued the gift cards; rather, it was performing its obligation under the contract formed when its customers purchased merchandise of the requisite aggregate value during its holiday promotion. Under the terms of that promotion (which the parties agree were advertised prominently in the store), the gift cards provided would expire on January 30, 2010. The record does not reveal *why* Abercrombie issued gift cards stating that they had no expiration date—possibilities abound, ranging from honest mistake to effort to mislead consumers into not using the cards before they expired—but what is relevant here is only that there is no basis to say, as Boundas does, that issuance of the gift cards created "a separate contract" in which Abercrombie was bound to honor the cards forever. There is no evidence that Abercrombie's customers incurred any reciprocal obligation in consideration for Abercrombie's issuance of a card that never expired; if that was a promise Abercrombie made, it is not one enforceable in contract. That is not to say that there may not have been other legal theories under which Abercrombie could be bound to honor the "no expiration date" cards,[12] but breach of contract is the only claim at issue, and the motion provides no basis to conclude that Abercrombie was contractually bound to honor the gift cards after January 30, 2010.

---

[12] Promissory estoppel, for example, might be one. Illinois recognizes claims for promissory estoppel, *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 233 Ill. 2d 46, 51, 906 N.E.2d 520, 523-24 (2009), but reliance is one of the required elements. *Id.* And because proof of reliance would demand individualized proof, it is unlikely that a promissory estoppel theory could be pursued on a class basis. *See, e.g., Rowell v. Voortman Cookies, Ltd.,* 2005 WL 1026715, *2 (N.D. Ill. April 27, 2005) (denying certification of promissory estoppel claim for this reason).

Denial of Boundas's summary judgment motion is therefore warranted, not because there are disputed issues of material fact,[13] but because the legal theory on which Boundas's breach of contract claim is based is fatally flawed. And because the only legal theory she has advanced is untenable, it may be appropriate to require Boundas, pursuant to Fed. R. Civ. P. 56(f), to show cause why judgment should not be entered against her and in favor of Abercrombie. The Court will address this issue with the parties at a status hearing to be conducted on September 10, 2015, at 9:30 a.m.

Dated: August 28, 2015

John J. Tharp, Jr.
United States District Judge

---

[13] In view of the Court's ruling, it is not necessary to parse Abercrombie's argument that there is a fact dispute regarding the materiality of the expiration date term.